BRADLEY, Judge.
This is an adoption case.
The record on appeal does not contain a transcript of testimony. The facts that will be hereinafter recited have been gleaned from the pleadings, affidavits, exhibits, reports by the Department of Pensions and Security, and the trial court’s interlocutory and final judgments.
The child involved in the adoption proceedings was born on August 9, 1978 to Mary Jane Askew Long. The baby will be referred to as “Baby Boy Askew.” Mary *1171 Jane was married to J. D. Long at the time of the birth, although she had filed a petition for divorce. The Longs had been separated for three years. J. D. Long was serving a prison sentence in Nashville, Tennessee during their separation.
Mary Jane and John Hoskins lived together in Fairview, Tennessee from June 1977 to July 1978. Sometime during the latter part of July 1978 Mary Jane left Hoskins and moved to Birmingham, Alabama. Shortly after arriving in Birmingham she became acquainted with the appel-lees, James and Anna Louise Nichols, who wished to adopt her unborn baby.
Baby Boy Askew was born in Birmingham on August 9, 1978 and the Nicholses filed their petition for adoption in the Probate Court of Jefferson County on August 18, 1978 with the written consent of the natural mother.
The petition stated that the name and address of the child’s natural father were unknown and that his consent was not required. The sworn statement of consent by Mary Jane which was also filed with the court stated that she was the natural mother and consented to the adoption. Also filed with the court was the baby’s birth certificate naming the mother but leaving blank the name of the father.
Mary Jane filed an affidavit with the court stating that on the date of the child’s birth she was unmarried and did not know the identity of the child’s father.
On August 18, 1978 the probate court set October 17,1978 as the date for hearing the adoption petition. The court then referred the matter to the Department of Pensions and Security of the State of Alabama for an investigation and report.
The report filed by the Department stated that according to the birth certificate, the natural mother was Mary Jane Askew and that no father was listed; no information was available regarding the father of the child; and the home conditions of the Nicholses were favorable.
On October 17, 1978 the probate court entered an interlocutory decree finding the child was suitable for adoption by the Nich-olses. The court further ordered that the petition for adoption be conditionally granted and, unless just cause was shown to the contrary, the decree would be made final in six months.
In January 1979 the appellant, John Hos-kins, who claims to be the child’s natural father, learned through the Blount County Department of Pensions and Security of the pending proceedings in the Jefferson County Probate Court. On April 12, 1979 he filed a petition in the probate court averring that he is the natural father of the child; that he and the child’s mother were not married; that he has at all times acknowledged the child as his own; that Mary Jane knew the identity of the father but falsely swore she did not know; that he was not notified of the adoption proceedings, and he requests the court to set the interlocutory order aside and hold a new hearing.
The appellant’s petition was heard on April 24, 1979. At this time John Hoskins did not appear personally, but appeared through his attorney. On that same day, after consideration of all the evidence, the court found that more than six months had elapsed since the granting of the interlocutory decree; that the child had resided in the home of the Nicholses for six months; that the representatives of the Department of Pensions and Security had visited the child and the home and made a report; and that no valid cause exists why the child should not be legally adopted. Based on these findings, the court entered a final decree of adoption.
An appeal was filed with the Circuit Court of Jefferson County. After hearing the testimony ore tenus without a court reporter present, the circuit court affirmed the final order of adoption. This appeal followed.
In the absence of a transcript of testimony in the record, a decree reciting that it is based on the pleadings, proofs and testimony will not be disturbed. Davis v. Davis, 278 Ala. 328, 178 So.2d 154 (1965). *1172 And it will be presumed that the evidence was sufficient to support the decree or judgment where all the evidence is not in the record. Davis v. Davis, supra. In the absence of the evidence upon which it is based, the trial court’s decree must be upheld unless it appears that the court was without jurisdiction. Davis v. Davis, supra.
Hoskins argues that the trial court, was without jurisdiction because the required consent for the adoption had not been given as required by law.
Section 26-10-3, Alabama Code 1975, provides:
In case of illegitimacy, the consent of the mother alone shall suffice, except where paternity has been established.
It is undisputed that the child was illegitimate, that the mother consented to the adoption, and that paternity had not been established. Based on this evidence, it cannot be disputed that the trial court had jurisdiction to grant the adoption petition of the Nicholses.
Hoskins’ next contention is that a fraud was perpetrated upon the court when: (1) the Nicholses failed to notify the probate court of the names of both of the child’s parents; (2) the Nicholses failed to notify the court that the natural mother was living with a man at the time the child was conceived; and (3) the natural mother signed a sworn affidavit to the effect that she was not married at the time the child was born.
As for the first allegation of fraud, Hoskins argues that the Nicholses violated § 26-10-1 of the Alabama Code 1975 which requires that a petition of adoption shall contain:
[T]he name or names and place or places of residence of such father and mother, unless proven to be unknown to the petitioner; .
The Nicholses stated in their petition for adoption that the name and address of the child’s father was unknown. There is nothing in the record to indicate that they knew otherwise. The mother of the child stated in an affidavit that she did not know the identity of the child’s father. We conclude therefore that the name and address of the child’s father was unknown to the Nichols-es. Hence there was compliance with § 26-10-1.
The remaining allegations of fraud asserted by Hoskins are that the Nicholses failed to notify the court that the natural mother was living with a man at the time the child was conceived and that the natural mother signed an affidavit stating she was not married at the time the child was born, although she was, in fact, legally married to J. D. Long.
There is nothing in the record to indicate that the Nicholses knew that Hos-kins was living with Mary Jane at the time the child was conceived. Furthermore, there is certainly no statutory requirement that such a disclosure, even if known, be made. Therefore we hold that the petitioners did not perpetrate a fraud upon the court in this instance.
Hoskins concludes by arguing that he was denied due process and equal protection of the law in that he was not given notice of the adoption proceedings and was not given an opportunity to be heard.
There is nothing in the record that eyen remotely suggests that the trial court erroneously failed to notify Hoskins of the pendency of the adoption proceedings. In her affidavit, the mother stated that she did not know who had fathered the child. And, the Nicholses alleged in their adoption petition that they did not know the name or whereabouts of the child’s father, and the record does not dispute this assertion. Thus, we conclude that the trial court did not err in failing to notify Hoskins of the pendency of the adoption petition.
Although we have concluded that the record fails to support Hoskins’ contention that he should have been notified of the adoption proceedings, we would point out that Hoskins was allowed to intervene in the adoption proceedings and to attempt to show that he was the natural father of the child. And the trial court conducted a hearing on his motion even though he did *1173 not personally appear. Thus the record clearly shows that Hoskins did have an opportunity to prove his parentage.
The judgment of the trial court is affirmed.
AFFIRMED.
WRIGHT, P. J., and HOLMES, J., concur.